Kings County Trust Company v. Commissioner.
Kings Cty. Trust Co. v. Commissioner
Docket No. 2208.
United States Tax Court
1944 Tax Ct. Memo LEXIS 46; 3 T.C.M. (CCH) 1201; T.C.M. (RIA) 44367; November 16, 1944
*46 Laurence Graves, Esq., 20 Exchange Place, New York, N. Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in income tax for the year 1939, in the amount of $12,197.24. Minor adjustments set forth in the notice of deficiency are not contested. The sole issue involves the deductibility of accrued interest in the amount of $72,023.07, as a debt becoming worthless in 1939. Findings of Fact Petitioner, Kings County Trust Company, is a banking corporation of the State of New York, with its principal office at 342 Fulton Street, Brooklyn, New York. It filed its income and excess profits tax return for the taxable year here involved with the Collector of Internal Revenue for the first district of New York. Beginning on January 29, 1929, and at various times throughout the year petitioner made loans to Reylex Corporation (hereinafter called Reylex) in the total amount of $1,650,000. On January 5, 1931, an additional loan was made in the amount of $50,000. These loans were evidenced by a demand promissory note of Reylex, endorsed by William H. Reynolds, who owned all the stock *47 of Reylex. William H. Reynolds was a promoter of many business enterprises, each of which he carried on through a corporation owned in whole or in part, directly or indirectly by him. Reylex had been organized by Reynolds prior to 1929 to acquire a leasehold at the corner of Lexington Avenue and 42nd Street in New York City, and to build on that site a modern hotel and office building. Reylex acquired the leasehold on this property, but thereafter, prior to 1929, sold it to the Chrysler Building Corporation for a consideration of $500,000 in cash and $2,000,000, face value, of serial notes of the Chrysler Building Corporation, payable $200,000 annually, beginning May 1, 1931. As collateral for the loans from petitioner to Reylex, Reylex deposited the Chrysler Building Corporation notes in the amount of $2,000,000 and Reynolds, personally, deposited 30,000 shares of Reylex, 30 shares of Long Beach-on-the-Ocean, and insurance policies on his life amounting to $438,000. The promissory note given by Reylex and endorsed by Reynolds bore interest at the rate of six per cent per annum. In addition, there was an oral agreement to pay two per cent per annum as a commission or extra interest, *48 which amount was to be paid at the time the loan was discharged. No memorandum or any other notation or record was ever made of this agreement. The negotiations for the loan to Reylex were conducted by Reynolds, representing Reylex, and James P. Fairchild, president of petitioner, on behalf of petitioner. Both are since deceased. At the time petitioner made the loans to Reylex it opened a ledger account in the name of Reylex, upon which was entered the amount of the loans and a description of the collateral pledged as security. The six per cent interest recited in the note was regularly accrued on the ledger sheet bearingt his account and was entered thereon in ink. On the lower left-hand side of the ledger sheet bearing the Reylex account, amounts equalling two per cent per annum of the outstanding principal of the loans were entered in lead pencil semi-annually from December 31, 1929, to June 30, 1931. Nowhere else in the records of petitioner is there any other entry representing this item. No account in the name of Reynolds as an individual was opened. From December 31, 1929, to June 30, 1931, this accrued two per cent interest amounted to $72,023.07. For each of the years 1929, *49 1930, and 1931, petitioner carried these accrued amounts into income and included them in taxable income in its income tax return for each of the years. No accruals of this two per cent interest were made after June 30, 1931. The obligation to pay the accrued two per cent interest was the obligation either of Reynolds personally or of the Reylex Corporation. Reynolds died on October 13, 1931, and petitioner was appointed executor of his estate, popularly thought to be worth in the neighborhood of $10,000,000. Thereafter, upon advice of counsel, petitioner made no further accruals of the two per cent interest, although it continued to accrue and be repaid regularly by Reylex the six per cent interest. At the time of Reynolds' death the outstanding amount due from Reylex on the principal of the note was $1,428,895.52. In August 1935, the Reylex indebtedness was finally liquidated out of the proceeds of a part of the collateral deposited by Reylex and Reynolds, and the remaining collateral and a cash balance from the sale of collateral was released. The item of two per cent interest accrued to June 30, 1931, remained on the books, unpaid. No payments have ever been made by either *50 Reynolds' estate or Reylex on this amount of accrued two per cent interest. In 1934 and 1935 petitioner credited this accrued interest with amounts totaling $27,449.88, but upon advice of counsel these entries were reversed on June 30, 1935, with the following notation: "Paid to interest through error and transferred to principal in reduction of principal debt by advice of counsel * * *." The estate of Reynolds has not yet been fully administered. Principal assets of the estate consist of 30 shares of Long Beach-on-the-Ocean, Inc., constituting one-half of the outstanding shares of that corporation, which were valued at $1,748,079.37 in an intermediate accounting filed in the Surrogate's Court of the County of Nassau, New York, in 1936. Long Beach-on-the-Ocean, Inc., was engaged in various extensive real estate enterprises. Either directly or through severally wholly-owned subsidiaries, it owned the Boardwalk at Long Beach, real estate in the City of Long Beach, the Lido Club Hotel, and a very considerable amount of undeveloped and developed real estate in various summer colonies. The remaining 50 per cent of the stock interest of Long Beach-on-the-Ocean was owned by Elmer E. Smathers. *51 Reynolds, Smathers, and Charles B. Schaffer were the directors of the corporation. At the time of Reynolds' death Long Beach-on-the-Ocean was indebted in the amount of $900,000 on notes to Smathers and Schaffer, and in the amount of $300,000 on open account to Sandringham By The Sea, Inc., a wholly-owned corporation of Reynolds. It was liable as endorser on a $1,400,000 mortgage note given by the Lido Club Hotel, one of its wholly-owned subsidiaries. Reynolds was also endorser on this note. In 1939 foreclosure proceedings against the Lido Club Hotel were commenced, the foreclosure was had, and a deficiency judgment was entered against Long Beach-on-the-Ocean and the estate of Reynolds. Subsequently, this deficiency judgment was reversed on appeal. Other assets of the estate as of 1939 consisted of all the shares of Pershing Square Operating Company, a corporation conducting small business operations in Long Beach; all the shares of Vanderveer Center, Inc.; all the shares of Blythebourne-West Brooklyn Water Corporation shares of the Elmohar Mining Company and of the Retla Mining Company; shares of Santone Oil Company; three-fourths of the shares of Lido Oil Company, a producing oil *52 company in Texas; all the shares of Sandringham By The Sea, Inc., which held Reynolds' yacht and an undisclosed amount of cash. As of 1939 the principal preferred creditors of the estate were the United States and the State of New York, on account of income taxes for passed years. For the years 1926 to 1931, inclusive, the estate owed approximately $138,793.00 in Federal income taxes and $20,663.00 in New York State income taxes. A transferree liability assessed against the estate amounting to $51,400.00. Litigation involving the estate tax is still pending. In 1939 there were pending also several suits against the estate involving claims aggregating approximately $1,000,000 on account of various acts alleged to have been committed by Reynolds during his lifetime. The principal claimant was Long Beach-on-the-Ocean. The estate was contesting all of these suits. No demand has ever been made on the estate for payment of accrued interest in the amount of $72,023.07, nor was any claim for this amount ever presented to the Surrogate. In an intermediate account filed with the Surrogate's Court in 1936, no mention was made of such a claim. Schedule D of that account was described as containing, *53 among other items, "separate itemized statement of the personal claim, if any, of the Executor, required to be proved before the Surrogate, pursuant to Section 212, of the Surrogate's Court Act." Only one claim of petitioner against the estate is thereunder set forth. The nature of that claim being described as a possible liability as guarantor of 13 mortgages on property of Pershing Square Operating Company, aggregating $65,000. As of December 28, 1939, petitioner charged the accrued two per cent interest off its books and deducted it as a bad debt in its return for that year. The Commissioner disallowed the deduction with the following explanation: "It is held that the item of $72,023.07 for alleged interest accrued in prior years on loans due to your corporation does not represent an allowable deduction from gross income for 1939 under the provisions of Sec. 23(k) of the Internal Revenue Code, as amended by Section 124 of the Revenue Act of 1942." Opinion ARUNDELL, Judge: The sole issue for decision is the deductibility in 1939 of an amount of $72,023.07, accrued as interest on petitioner's books from December 31, 1929, to June 30, 1931, and charged off as a bad debt in 1939. *54 Petitioner contends that the amount was a personal obligation of Reynolds prior to his death and thereafter an obligation of his estate, and that it became worthless in 1939. Respondent takes issue with both points. In regard to the first point, the evidence is vague and unsatisfying. Petitioner, a banking corporation, made a very substantial loan to Reylex, a corporation wholly-owned by Reynolds, and took a promissory note of Reylex, endorsed by Reynolds individually. The note is not in evidence. Testimony shows that it bore interest at the rate of six per cent. In addition, it was testified that there was an oral agreement between Reynolds and James P. Fairchild, then president of petitioner, to the effect that Reynolds, individually, would pay additional interest of two per cent per annum, to be paid when the loan was discharged. No memorandum was made of this agreement and nothing in the records of petitioner indicates such an obligation on the part of Reynolds. Both Reynolds and Fairchild have since died. The only witness to the alleged oral agreement between Reynolds, as an individual, and Fairchild was a bookkeeper of petitioner, who testified that he did hear such an agreement *55 entered into between the two. The records of the bank, such as they are, support the testimony as to an agreement to pay two per cent additional interest, but tend to contradict the testimony that the obligation was assumed by Reynolds personally. The additional two per cent interest was accrued semi-annually in lead pencil on the far left side of the ledger sheet bearing the account of Reylex with nothing to indicate that it was other than an obligation of Reylex. No account was opened in the name of Reynolds. There is nothing in the record to indicate why this account was so carried; when asked, the vice president and the bookkeeper of petitioner declared that they had no idea of the reason for it. The loan was not usurious. [1] It is difficult to understand why an established bank should so carelessly treat an amount so substantial. Upon such evidence we would hesitate to find that the obligation was other than it appears to be on the records of petitioner - an obligation of Reylex. *56 Assuming, however, that Reynolds did, in fact, agree individually to pay the additional interest at the rate of two per cent per annum, we do not think petitioner has shown itself entitled to a deduction for worthlessness in 1939. By virtue of section 23 (k) of the Internal Revenue Code, as amended by section 124 of the Revenue Act of 1942, [2] petitioner must show that the debt became worthless within the taxable year. *57 Initially it should be observed that petitioner ceased to accrue the two per cent interest upon the death of Reynolds. Why this was done is not explained, except that the vice president of petitioner testified in this regard as follows: Counsel advised Mr. Fairchild, our president, and me in charge of this Reynolds estate, that in view of the agreement between Reynolds and the bank as an oral agreement - * * * * *
and our close relationship as executor for the estate, that we should not make any further accruals of the amount which Reynolds had agreed to pay, that we should collect the Reylex note and the Reylex interest and let the rest go. No attempt to secure payment of the amount was ever made, except that in 1934 and 1935, two amounts were credited to the account, but these entries were subsequently reversed "upon advice of counsel". In the interim account of proceedings filed with the Surrogate's Court in 1936, no such claim appeared in a schedule purporting to set forth all claims and possible claims against the estate, including personal claims of the executor. In 1935, upon satisfaction of the principal and accrued six per cent interest, a substantial balance of the *58 collateral security was released to Reylex Corporation and to the estate of Reynolds. These facts point strongly to an abandonment of the claim prior to 1939. More important, however, is the fact that the record contains no competent evidence whatsoever as to the value of the estate in 1939, the year of the charge-off and deduction. No complete statement of the assets and liabilities of the estate was presented, and in regard to such assets as were described, no attempt at valuation was made, although it is apparent that some of the assets were of substantial value. It is true that considerable litigation was in progress in 1939 and that the claims of preferred creditors involved a large sum. However, the estate was contesting all of the litigation and it appears that it was successful in some of the suits. The outcome of others is not indicated. The estate tax liability had not yet been fixed. Even were all the claims against the estate successful, there is no indication of the value of the estate's assets as compared with the liabilities. Upon these facts, we cannot but conclude that petitioner has failed to establish worthlessness in 1939. The determination of the Commissioner *59 is sustained. Decision will be entered for the respondent.
Footnotes
1. Banking Law. § 108 Rate of Interest; effect of usury. * * * * *
3. Upon advances of money repayable on demand to an amount not less than five thousand dollars made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, any bank or trust company may receive or contract to receive and collect as compensation for making such advances any sum which may be agreed upon by the parties to such transaction.↩
2. SEC. 124. DEDUCTION FOR BAD DEBTS, ETC. (a) GENERAL RULE. - Section 23(k) (relating to bad debts and securities becoming worthless) is amended to read as follows: "(k) BAD DEBTS. - "(1) GENERAL RULE. - Debts which become worthless within the taxable year; * * * * * * * *
(d) EFFECTIVE DATE OF AMENDMENTS. - The amendments made by this section adding the last sentence of section 23(k)(1) and adding section 23(k)(4) shall be effective only with respect to taxable years beginning after December 31, 1942; the amendment inserting section 23(k)(5)↩ and amendments related thereto shall be applicable only with respect to taxable years beginning after December 31, 1942; and the other amendments made by this section shall be effective with respect to taxable years beginning after December 31, 1938.